GULF & SHIP ISLAND RAILROAD COMPANY *v.* WILLIAM C.
ELLIS.

RAILROADS.  *Cattle guards.*  *Code* 1892, § 3561.  *Interior crossings.*

Where a railroad company constructed a sufficient stock gap
and cattle guard, both where its track entered and where it
passed out of enclosed lands, used as one tract and belonging to
one person:

(*a*) It complied with Code 1892, § 3561, making it the duty of
every railroad company to construct and maintain all necessary
or proper stock gaps and cattle guards where its track passes
through enclosed land; and

(*b*) It cannot be required to construct other stock gaps or cattle
guards at a place within the enclosure where it had, for the con-
venience of the owner, constructed a crossing over its track.

FROM the circuit court of Rankin county.

HON. JOHN R. ENOCHS, Judge.

Ellis, the appellee, was plaintiff, and the railroad company,
the appellant, defendant in the court below. From a judgment
in plaintiff's favor the defendant appealed to the supreme court.

The suit was for the statutory penalty imposed on railroad
companies by Code 1892, § 3561, for a failure to construct and
maintain all necessary or proper stock gaps and cattle guards
where their tracks pass through enclosed lands, which statute is
in the following words:

"3561. *Stock gaps and cattle guards.*—It is the duty of every
railroad company to construct and maintain all necessary or
proper stock gaps and cattle guards where its track passes
through enclosed land, and to make and maintain convenient
and suitable crossings over its track for necessary plantation
roads. For any failure so to do the railroad company shall be
liable to pay two hundred and fifty dollars, to be recovered by
the person interested."

The railroad company had constructed and maintained a sufficient stock gap and cattle guard where its track entered the enclosed land on the north, and also where it passed out of the enclosure on the south. It had, at plaintiff's request and for his accommodation, constructed a crossing over its track and through its wire fences at a point within the enclosure. The complaint was that one of the cattle guards placed by the railroad on the sides of this interior crossing was defective, and permitted cattle to pass over it.

*McWillie & Thompson,* and *Jas. H. Neville,* and *E. J. Bowers,* for appellant.

Under the undisputed testimony in this case, construing it most favorably for the plaintiff, the railroad company was not required to maintain a cattle guard or a stock gap at the interior crossing. Code 1892, § 3561, makes it the duty of every railroad company to construct and maintain all necessary and proper stock gaps and cattle guards where its track passes through enclosed land, and to make and maintain convenient and suitable crossings over its track for necessary plantation roads. In the case now before us the railroad company maintained a proper stock gap and cattle guard where its track entered the plaintiff's enclosed land and where it departed therefrom. This was a full, complete, and perfect compliance with the section of the code under consideration touching the construction of stock gaps and cattle guards. The railroad company was required to make and maintain a necessary crossing over its track for necessary plantation roads, and if a pasture be considered and treated as a part of a plantation, it was necessary for the railroad to maintain the crossing located in plaintiff's pasture, but the statute does not require that stock gaps or cattle guards should be maintained on either side of such crossing. The statute is a penal one. It should be and, of course, will be strictly construed. If the case be one for which the legislature should have provided, that makes no difference,

because this court is not a law-making body. The case before the court does not fall within any one of the many decisions which have construed the statute in question. It is somewhat unique in its facts, and, we submit, is clearly without the terms of the statute. This being true, the peremptory instruction asked should have been given for the defendant, but certainly the instructions given at the plaintiff's request ought to have been denied.

*S. L. McLaurin,* and *A. G. Norrell,* for appellee.

Counsel for appellant contend that a railroad company is never required to build more than two stock gaps on one man's land, one at either end, and that, Ellis having testified that the stock gap at the crossing is the one sued for, he has no right to recover in this suit for a failure to maintain any other stock gap.

Upon the first proposition we submit that in some cases it may be necessary for the railroad to build as many as half a dozen stock gaps on the same tract of land. Suppose one man owns a full section of land with a cross fence through the middle, is he not entitled to have a stock gap where this cross fence crosses the railroad? If not, how could he ever have any cross fence on his land? Surely the cross fence would be worth nothing to him if he could not get a stock gap, for without the stock gap cattle could go from one field into the other. In the present case the plantation crossing was necessary. *Odeneal* v. *Railway Co.,* 73 Miss., 34. It therefore follows that a stock gap on either side of the crossing was necessary. The railroad considered it necessary, because they had maintained some kind of a pretense of a stock gap there from the time the railroad was built.

The scope and extent of the suit is to be determined by the declaration, and not by the testimony; and in this case the suit is for failure to make and maintain necessary stock gaps on the land described in the declaration, and if the cattle could go out over the stock gap at the crossing on to defendant's right of

way and thence on the land of others, it is manifest that the company did not maintain the necessary stock gaps, and the court might well have given a peremptory instruction for the plaintiff.

The necessity for the stock gap where the plantation road crosses the railroad in the pasture in this case is, in our opinion, beyond question. The Gulf & Ship Island Railroad Company undoubtedly so considered it, as they had kept some kind of a pretense of a stock gap at that point since the date of the construction of the railroad. Undoubtedly it was the duty of the railroad to make and maintain such stock gaps and cattle guards that when Ellis would turn his cattle into his pasture they could not leave the pasture over the railroad stock gap and cattle guard.

Counsel for the railroad company undertook by the testimony to confine Ellis in his suit to the one stock gap at the plantation crossing, and this because they asked him if this was the stock gap he was suing for, and he answered in the affirmative. From the declaration it is to be ascertained what the suit is brought for, and not from the testimony. Plaintiff sues for the failure to make and maintain suitable and convenient stock gaps and cattle guards on the land mentioned in the declaration, and if the proof shows that any necessary stock gap is not maintained, the plaintiff would be entitled to recover.

WHITFIELD, C. J., delivered the opinion of the court.

There may be cases in which it would be the duty of a railroad company to construct and maintain more cattle guards than one where the railroad enters upon, and one where the railroad makes its exit from, an inclosed tract of land. The statute does not specify the number. There might be a very large body of land, lying on both sides of the railroad track, many thousand acres in extent, the property of one owner; and this body of land might be subdivided into half a dozen cultivated farms, and interspersed between them might be half a dozen pastures,

and the cultivated land might be divided from the pastures by cross fences intersecting the railroad. In such cases, doubtless, it would be the duty of the railroad company to construct and maintain proper cattle guards where each of such cross fences intersected the railroad track. Of course this qualification must attach even in such cases—that is to say, that the subdivision should be made in good faith, and not simply to make a case for penalties against a railroad company. But the difficulty with appellee's case is that no such state of facts is shown by this record. So far as this record discloses, there is just one body of land involved, one hundred and fifty acres in extent, around where the railroad enters upon and leaves the inclosed land. And the whole of this land on both sides of the railroad track is pasture land. Somewhere about the middle of the pasture, the railroad, for the convenience of the appellee, constructed a crossing, never used as a wagon road, but intended simply for passage of the cattle from one part of the pasture to the other over the railroad track. At the place where this crossing was, the railroad also erected cattle guards, and it is the northernmost one of these two interior cattle guards which is complained of here as insufficient. So far as this record discloses, the northernmost and southernmost cattle guards are sufficient. There is no proof whatever that the cattle guard at the extreme northern end of the pasture is not entirely sufficient. Judging from the brief of appellee, it would seem that the purpose was to have shown this cattle guard to have been insufficient, but there is no such proof. Counsel for appellee insist that the declaration must show what is claimed. Granted; but the declaration must be supported by proof, and the only proof of any insufficiency in any cattle guard in this case is as stated above.

*Reversed and remanded.*